IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

KAREN HARGRAVE,

       Plaintiff,

    v.                                                CIVIL NO. 2:24-CV-01
                                             (KLEEH)

DAVIS MEMORIAL HOSPITAL, CORP.,

       Defendant.

MEMORANDUM OPINION AND ORDER
DENYING MOTION FOR SUMMARY JUDGMENT [ECF NO. 40]

Pending before the Court is a motion for summary judgment filed by the Defendant.  For the reasons discussed herein, the motion is **DENIED**.

## I.  PROCEDURAL HISTORY AND BACKGROUND

On January 9, 2024, Plaintiff Karen Hargrave ("Hargrave") filed a complaint against Davis Medical Center.  See ECF No. 1. On February 14, 2024, she filed an amended complaint, replacing Davis Medical Center with Davis Memorial Hospital, Corp. ("Davis").  See ECF No. 6.  In the amended complaint, Hargrave brings claims of age and race discrimination under the West Virginia Human Rights Act.  Davis filed a motion for summary judgment on June 16, 2025.  See ECF No. 40.  It is fully briefed and ripe for review.

MEMORANDUM OPINION AND ORDER
DENYING MOTION FOR SUMMARY JUDGMENT [ECF NO. 40]

### II.  STANDARD OF REVIEW

Summary judgment is appropriate if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  The movant "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (citations and internal quotation marks omitted).  The burden then shifts to the nonmoving party to present "specific facts showing that there is a genuine issue for trial." Blair v. Defender Servs., Inc., 386 F.3d 623, 625 (4th Cir. 2004) (citation omitted).

"When the moving party has carried its burden . . . , its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co., Ltd. V. Zenith Radio Corp., 475 U.S. 574, 586 (1986) (citations omitted).  Rather, the Court must ask "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52 (1986).  At its core, the summary-judgment process

**MEMORANDUM OPINION AND ORDER**
**DENYING MOTION FOR SUMMARY JUDGMENT [ECF NO. 40]**

examines whether a trial is needed.  See id. at 250.  "[T]he aim of summary judgment is not to determine the exact strength of a case and dispose of so-called weak cases, but instead to determine whether a rational jury could find in the plaintiff's favor." Wannamaker-Amos v. Purem Novi, Inc., 126 F.4th 244, 254 (4th Cir. 2025) (citation omitted).

### III. FACTS

Hargrave, who is an African American, began her employment with Davis in May 2019 as a Patient Access Manager.  Koch Dep., ECF No. 42-2, at 9:16-20; Hargrave Dep., ECF No. 42-1, at 18:2-6, 24:2-4.  At the time, she was over 50 years old.  Koch Dep., ECF No. 42-2, at 9:16-20.  Hargrave holds a bachelor's degree in science.  Hargrave Dep., ECF No. 42-1, at 9:4-11.  While employed, she was the only black manager at Davis.  Id. at 46:11-13.

At the beginning of Hargrave's employment, she reported directly to Grace Jennings ("Jennings"), the Director of Revenue Cycle, who reported to Melanie Dempsey ("Dempsey"), the Chief Financial Officer ("CFO").  Id. at 25:18-26:14.  Dempsey prepared Hargrave's performance evaluation for the year 2020.  See Def. Exh. 5, ECF No. 40-6.  She rated Hargrave's performance at 104.67%, awarding her 25.1 points out of 24.  Id.  Dempsey rated Hargrave as "meets expectations" in all areas but one, in which she rated her as "exceeds expectations."  Id.  Dempsey signed the performance

**MEMORANDUM OPINION AND ORDER**
**DENYING MOTION FOR SUMMARY JUDGMENT [ECF NO. 40]**

evaluation on March 30, 2021.  Id.  At that time, Hargrave had never been the subject of any discipline at Davis.  Steen Dep., ECF No. 42-4, at 39:18-23.  No one had ever raised concerns with her about her job performance.  Hargrave Dep., ECF No. 42-1, at 45:2-8.

In approximately November 2021, Jennings left Davis, at which point Hargrave temporarily reported directly to Dempsey.  Id. at 25:22-26:14.  In February 2022, Brandy Wildman ("Wildman"), who had previously been Dempsey's administrative assistant, replaced Jennings as the Director of Revenue Cycle.  Id. at 26:15-23. Dempsey also left Davis in February 2022, and William Koch ("Koch"), who was previously the Director of Finance, became the interim CFO.  Id. at 29:12-18; Koch Dep., ECF No. 42-2, at 21:19-24.  Koch was 35 years old.  Koch Dep., ECF No. 42-2, at 17:4-6. He became Hargrave's supervisor when he became the interim CFO. Hargrave Dep., ECF No. 42-1, at 29:22-30:3.

Despite having never worked with Hargrave in 2021, Koch filled out Hargrave's performance evaluation for the year 2021.  Def. Exh. 10, ECF No. 40-10.  He completed it on March 28, 2022, rating her performance at 75% and awarding her 18 points out of 24.  Id. Koch's evaluation of Hargrave included three ratings of "meets expectations" and three ratings of "needs improvement."  Id.  He rated    her    as    needing    improvement    in    the    area    of

**MEMORANDUM OPINION AND ORDER**
**DENYING MOTION FOR SUMMARY JUDGMENT [ECF NO. 40]**

"Dependability/Adaptability/Attendance," commenting that she needed "to communicate better when being out of the office" and "notify when [her] work schedule need[ed] to be adjusted i.e. coming in early or leaving later in the day." Id. He also rated her as needing improvement in the area of "Values," commenting that she needed "to show courtesy and respect when speaking with staff" and that "sensitive conversations need to occur in a private setting." Id. Finally, he rated her as needing improvement in the category reserved for "Supervisors and Management Staff Only," commenting that she needed "to utilize the Davis Way process to communicate and train staff" and that "[t]he tools are available for the processes to be improved." Id.

Koch's personal knowledge of Hargrave's performance began on February 13, 2022. Koch Dep., ECF No. 42-2, at 121:12-123:2. He testified that he generated the evaluation based, in part, on concerns expressed to him by Dempsey before her departure. Koch Dep., ECF No. 40-8, at 175:5-176:9. Jon Steen ("Steen"), the Vice President of Human Resources, also testified that he had advised Dempsey to "do a plan of correction" if Hargrave was not meeting expectations. Steen Dep., ECF No. 40-9, at 17:6-22. When Koch was asked how he determined whether Hargrave exceeded expectations, met expectations, or needed improvement, he testified that he based his evaluation on the time period from

5

**MEMORANDUM OPINION AND ORDER**
**DENYING MOTION FOR SUMMARY JUDGMENT [ECF NO. 40]**

February 13, 2022, to the end of March 2022.  Koch Dep., ECF No. 42-2, at 117:1-118:7.[1]  Koch did not speak to Jennings, Dempsey, or Hargrave about the evaluation.  Id. at 118:8-15; Koch Dep., ECF No. 42-2, at 140:2-20.  He did not review Hargrave's 2020 performance evaluation until April 2025, on the night before his deposition in this case.  Koch Dep., ECF No. 42-2, at 120:17-21.

In the performance evaluation, Koch noted that Hargrave showed a pattern of being "out of the office" without his knowledge and stated that Hargrave had failed to request paid time off in accordance with the accepted practice.  Id. at 127:16-128:9, 131:2-11; Def. Exh. 10, ECF No. 40-10.  He stated that Hargrave needed to communicate better when out of the office and notify him when her work schedule needed to be adjusted.  Def. Exh. 10, ECF No. 40-10.  During Koch's deposition, however, he was unable to identify any specific dates and times when there was a problem with Hargrave's work schedule.  Koch Dep., ECF No. 40-8, at 128:7-20.  Finally, he stated in the evaluation that Hargrave needed to show courtesy and respect when speaking with staff and that sensitive conversations needed to occur in a private setting.  Def.

---

[1] Steen testified that he would advise managers that when filling out an evaluation for a prior year, they should "stick to" the prior year.  Steen Dep., ECF No. 42-4, at 43:2-21.  Feedback from the current year should be included in the evaluation filled out the following year.  Id.

**MEMORANDUM OPINION AND ORDER**
**DENYING MOTION FOR SUMMARY JUDGMENT [ECF NO. 40]**

Exh. 10, ECF No. 40-10.  Koch had been notified of a complaint made to Human Resources that Hargrave had conducted a sensitive conversation with another employee in a public area where others could hear.  Koch Dep., ECF No. 40-8, at 123:17-24; Steen Dep., ECF No. 40-9, at 52:17-53:8.  Koch, however, never spoke to Hargrave about the complaint, did not know whether it had been investigated, and did not know whether the complaint was true. Koch Dep., ECF No. 42-2, at 123:20-126:24.

The same day Koch filled out Hargrave's performance review, he placed her on a Performance Improvement Plan ("PIP").  See Def. Exh. 7, ECF No. 40-7.  The main consideration in placing her on a PIP was her "[l]ack of participation in [the] Davis Way process excellence initiatives[.]"  Koch Dep., ECF No. 40-8, at 141:3-6. The Davis Way had been implemented during the previous year, and it was a system of "process improvement" that involved "reducing waste," "looking for areas for improvement," and "trying to decrease barriers."  Id. at 136:20-137:10; Steen Dep., ECF No. 42-4, at 20:8-21.  Steen testified that Hargrave was recurrently not present at Davis Way process improvement meetings and was not "embracing the process."  Steen Dep., ECF No. 40-9, at 52:3-16. Koch did not look at Hargrave's personnel file to see if she had ever been placed on a PIP before, and before that day, he had never previously spoken to her about performance issues.  Koch Dep., ECF

**MEMORANDUM OPINION AND ORDER**
**DENYING MOTION FOR SUMMARY JUDGMENT [ECF NO. 40]**

No. 42-2, at 143:1–144:10.  Hargrave had never previously received

a written or verbal warning.  Hargrave Dep., ECF No. 42-1, at 47:6–

8.

The PIP set forth expectations for performance improvement

over the next month, with a completion date of April 30, 2022.

Def. Exh. 7, ECF No. 40-7.  The "performance improvement

opportunity" was summarized as an expectation that Hargrave would

do the following:

> Demonstrate and utilize the Davis Way
> processes and training. Communicate effective
> [sic] and efficiently with staff.  Ensure
> staff training is being completed and
> documented. Focus on MSP ("Medicare Secondary
> Payer") audits, decreasing duplicate
> patient registrations, and following standard work for
> the registration process.

Id.  The PIP listed seven bullet-pointed steps to be taken in order

to meet performance standards, and it identified the following

desired results: "Visible participation in Davis Way activities

(Status Sheets and Huddles)"; "Actionable OFIs presented to 1up

and 2up by the week of April 25th – April 29th"; "Draft training

template for trainer/trainee and manager/trainer"; "Increase in

MSP compliance [up to 97%]"; and "No incidents of improper

communication."  Id.  The PIP advised that a possible consequence

of failing to complete it was "[s]tep down from the management

MEMORANDUM OPINION AND ORDER
DENYING MOTION FOR SUMMARY JUDGMENT [ECF NO. 40]

position and/or termination."  Id.  Hargrave signed the document.
Id.

During the PIP period, Hargrave met weekly with Koch regarding
her progress.  Hargrave Dep., ECF No. 40-1, at 72:11-12.  At the
end of the initial period, Hargrave had met some but not all of
the PIP goals.  Id. at 73:21-24.  The PIP period was extended, and
Hargrave was issued an updated PIP on April 29, 2022.  Def. Exh.
11, ECF No. 40-11.  The completion date for the updated PIP period
became May 20, 2022.  Id.  The updated PIP included new goals:
giving "[n]otification of new hire orientation dates to leads as
soon as hire dates are known" and "attend[ing] mandatory meetings
timely."  Id.  Hargrave signed the updated PIP, and she did not
raise any questions or concerns about it with Koch.  Id.; Hargrave
Dep., ECF No. 40-1, at 76:24-77:8.

On May 20, 2022, Hargrave's employment was terminated.  Def.
Exh. 12, ECF No. 40-12.  Substantively, the termination letter
states only that she was being terminated for "[f]ailure to
complete the performance improvement plan."  Id.  More
specifically, she did not complete the training template
identified in the updated PIP within the required timeframe.
Hargrave Dep., ECF No. 40-1, at 93:13-24.  Second, her MSP Audit
Compliance rate was at 94% accuracy, which fell short of the 97%
goal.  Id. at 100:14-101:10.  Wildman, Koch, and Steen were present

**MEMORANDUM OPINION AND ORDER**
**DENYING MOTION FOR SUMMARY JUDGMENT [ECF NO. 40]**

during the termination meeting. Hargrave Dep., ECF No. 42-1, at

79:14-16. During the meeting, in addition to the termination

letter, someone provided Hargrave with a paper list that appeared

to include numerous issues with her job performance. Id. at 78:2-

24, 79:8-13. The list included the following:

> All items from status with Mandy are not reported at 2 up

> Outpatient order queue not being worked timely

> Dedicated trainer leaving early and telling new staff she is training to leave early

> Missed biannual review for Brandi

> Requested training to Que flow not completed

> Errors in payroll every week

> No job description for leads provided

> Lack of communication – ei. Email today for 30 day policy

> SW for incorrect pt registration – was this implemented?

> SW for duplicate patients – PEx needs finally copy

> HIPPA violation

> Staff at PAC feels like accuracy is not necessary as long as they are getting a high volume

> DJ singled out in front of peers

MEMORANDUM OPINION AND ORDER
DENYING MOTION FOR SUMMARY JUDGMENT [ECF NO. 40]

> SW and process change alert for patient CD's
> containing clinical information – requested by
> H1M at least 3 times
>
> Has SW for Behavioral Health Request been
> communicated with registration
>
> Has Cheryl been reprimanded for the way she
> treats coworkers and patients, Paige was in
> tears today
>
> Conversation with Sheena in hallway overheard
> by other employees

Exh. 13 to Hargrave Dep., ECF No. 42-1.  During the meeting,

however, no one spoke about the list.  Hargrave Dep., ECF No. 42-

1, at 80:3–11.  Wildman does not know where the information on the

list came from, she does not know who typed it, and she does not

have any evidence to support the issues on the list.  Wildman Dep.,

ECF No. 42-3, at 78:1–88:24.  Many of the issues on the list

predated Wildman's tenure as Director of Revenue Cycle, and she

never verified them.  Id. at 14–19.  Koch, too, does not know what

the list is, did not draft it, and does not recall seeing it before

Hargrave's employment was terminated.  Koch Dep., ECF No. 42-2, at

155:20–161:17.  The items on the list were not included in the

PIP.  Id. at 155:20–161:17.

        After Hargrave's termination, Davis leadership discussed

whether Brandy Cunningham ("Cunningham"), who was the Patient

Access Coordinator, was qualified to replace Hargrave in the role

of Patient Access Manager.  Koch Dep., ECF No. 40-8, at 79:20–24.

MEMORANDUM OPINION AND ORDER
DENYING MOTION FOR SUMMARY JUDGMENT [ECF NO. 40]

Cunningham is a white woman and was 30 years old at the time. Cunningham Dep., ECF No. 40-14, at 15:22-24; Hargrave Dep., ECF No. 40-1, at 46:11.  She had been in the role of Patient Access Coordinator since April 2017 and had been Hargrave's subordinate. Hargrave Dep., ECF No. 40-1, at 39:3-4; Def. Exh. 14, ECF No. 40-15.  Hargrave had, at times, seen Koch and Wildman in meetings with Cunningham.  Hargrave Dep., ECF No. 40-1, at 47:9-18, 106:22-109:10.  Hargrave felt as though the three of them wanted her (Hargrave) to fail.  Id.  Someone in the business office once told Hargrave that Cunningham was in Wildman's office a lot and that Hargrave had better "watch it."  Id. at 109:8-16.

On May 23, 2022, Wildman sent an email to Char Fitzwater ("Fitzwater") and Beth Eisner ("Eisner"), members of Human Resources, attaching Cunningham's resume.  Wildman Dep., ECF No. 42-3, at 33:5-35:12.  The qualifications for the Patient Access Manager position included a bachelor's degree and 3-5 years of leadership experience in a healthcare environment.  Def. Exh. 2, ECF No. 40-2.  Wildman knew that under the position description, Cunningham did not meet the educational requirement because she did not have a college degree.  Wildman Dep., ECF No. 42-3, at 35:16-36:6.  Fitzwater told Wildman that while Cunningham could hold the position in the interim, she did not meet the educational requirement or the minimum experience requirement for the

**MEMORANDUM OPINION AND ORDER**
**DENYING MOTION FOR SUMMARY JUDGMENT [ECF NO. 40]**

permanent position.  <u>Id.</u> at 39:15-40:1.  Fitzwater told Wildman that the minimum amount of experience that could be considered the equivalent of a bachelor's degree would be 5-10 years of management experience.  <u>Id.</u> ECF No. 42-3, at 37:15-22.

On the same day, Wildman placed Cunningham in the role of interim Patient Access Manager.  Cunningham Dep., ECF No. 40-14, at 24:1-25:22; Wildman Dep., ECF No. 42-3, at 36:7-10.  Wildman also revised the qualifications for the Patient Access Manager position to include a bachelor's degree <u>or</u> 5-10 years of management experience in a healthcare environment.  <u>Id.</u>; Def. Exh. 13, ECF No. 40-13 (emphasis added).  Despite the fact that the change was made before the job was posted, Wildman testified that the changes were made due to a lack of applicants.  Wildman Dep., ECF No. 42-3, at 28:5-16.

The permanent position was posted on May 24, 2022.  Def. Memo. in Support, ECF No. 41, at 6.  Cunningham did not apply for the permanent position in the initial round of applications.  Cunningham Dep., ECF No. 40-14, at 25:23-26:3.  On June 7, 2022, she applied for the permanent position.  Def. Exh. 18, ECF No. 40-18.  Cunningham interviewed with Wildman, and she was selected for the position.  Cunningham Dep., ECF No. 40-14, at 62:16-66:20.  Davis management determined that Cunningham's five years as Patient Access Coordinator constituted management experience.

MEMORANDUM OPINION AND ORDER
DENYING MOTION FOR SUMMARY JUDGMENT [ECF NO. 40]

Koch Dep. at 80:8-16; Def. Exh. 15, ECF No. 40-15. Wildman, along with other management personnel, perceived that Cunningham was performing well in the position and was adequately performing all parts of the job. Wildman Dep., ECF No. 40-17, at 106:10-107:1; Steen Dep., ECF No. 40-9, at 75:13-76:14. Cunningham remains in an equivalent role, following an organizational restructuring after Davis was acquired by Vandalia Health. Cunningham Dep., ECF No. 40-14, at 17:1-18.

Ten applicants had applied for the Patient Access Manager position. Def. Exh. 16, ECF No. 40-16. Steen testified that the applicants largely lacked relevant experience or had other undesirable characteristics, such as a history of job-hopping, "shotgun" applying for a large number of jobs with the organization, or being in a location too far from the area. Steen Dep., ECF No. 40-9, at 70:2-24, 81:14-22. One applicant, Carlee Webley, held bachelor's degree, but Koch hired her as his administrative assistant — a position for which a bachelor's degree was not required. Def. Exh. 16, ECF No. 40-16; Koch Dep., ECF No. 41-2, at 171:7-20. Only Cunningham was interviewed for the position. Wildman Dep., ECF No. 42-3, at 49:22-50:1.

At some point, Cindy Markley, a Human Resources employee, asked Cunningham about an allegation that she (Cunningham) and Koch were having an affair. Cunningham Dep., ECF No. 42-5, at

**MEMORANDUM OPINION AND ORDER**
**DENYING MOTION FOR SUMMARY JUDGMENT [ECF NO. 40]**

74:1-24.  Koch was never asked about the alleged affair as part of

any investigation.  Koch Dep., ECF No. 42-2, at 90:2-7.  Koch was

married and had an affair twice with another employee in his

department.  Id. at 90:15-108:17.  He was never disciplined for

the affair.  Id. at 107:18-20.

## IV.  DISCUSSION

Hargrave brings claims under the West Virginia Human Rights

Act ("WVHRA"), W. Va. Code § 5-11-1, et seq., which has since been

recodified at W. Va. Code § 16B-17-1, et seq.  Under the WVHRA,

> It shall be an unlawful discriminatory
> practice, unless based upon a bona fide
> occupational qualification . . . [f]or any
> employer to discriminate against an individual
> with respect to compensation, hire, tenure,
> terms, conditions, or privileges of employment
> if the individual is able and competent to
> perform the services required even if such
> individual is blind or disabled.

W. Va. Code § 16B-17-9(1).  In adjudicating claims of unlawful

discrimination under the WVHRA, the Supreme Court of Appeals of

West Virginia has adopted the burden-shifting framework set forth

by the United States Supreme Court in McDonnell Douglas Corp. v.

Green, 411 U.S. 792 (1973).  As adopted in West Virginia,

> First, the plaintiff has the burden of proving
> by the preponderance of the evidence a prima
> facie case of discrimination.  Second, if the
> plaintiff succeeds in proving the prima facie
> case, the burden shifts to the defendant "to
> articulate some legitimate, nondiscriminatory
> reason for the employee's rejection."

MEMORANDUM OPINION AND ORDER
DENYING MOTION FOR SUMMARY JUDGMENT [ECF NO. 40]

> (citation omitted). Third, should the
> defendant carry this burden, the plaintiff
> must then have an opportunity to prove by a
> preponderance of the evidence that the
> legitimate reasons offered by the defendant
> were not its true reasons, but were a pretext
> for discrimination. (citation omitted).

Shepherdstown Volunteer Fire Dep't v. State ex rel. State of W. Va. Human Rts. Comm'n, 309 S.E.2d 342, 352 (W. Va. 1983) (citation omitted). The Supreme Court of Appeals of West Virginia has "consistently looked to federal discrimination law dealing with Title VII of the Civil Rights Act of 1964 . . . when interpreting provisions of our state's human rights statutes." W. Va. Human Rts. Comm'n v. Wilson Estates, Inc., 503 S.E.2d 6, 12 (W. Va. 1998). The Court must "resist the temptation to become so entwined in the intricacies of the proof scheme that they forget that the scheme exists solely to facilitate determination" of the ultimate question of whether discrimination occurred. Merritt v. Old Dominion Freight Line, Inc., 601 F.3d 289, 295 (4th Cir. 2010).

A. **Because Hargrave has produced evidence that she was a competent, capable, and loyal employee who was replaced by someone outside of her protected classes, she has satisfied the elements of her prima facie cases of age and race discrimination.**

In order to establish a prima facie case under the burden-shifting framework, a plaintiff must show the following: "(1) that the plaintiff is a member of a protected class; (2) that the employer made an adverse decision concerning the plaintiff; and

**MEMORANDUM OPINION AND ORDER**
**DENYING MOTION FOR SUMMARY JUDGMENT [ECF NO. 40]**

(3) but for the plaintiff's protected status, the adverse decision would not have been made." Syl. Pt. 3, Conaway v. Eastern Assoc. Coal Corp., 358 S.E.2d 423 (W. Va. 1986). Here, it undisputed that the first and second elements of the prima facie case are satisfied. The parties disagree as to the third. Davis argues that the record contains no evidence showing that the adverse employment action was connected to Hargrave's protected statuses. For instance, the record contains no reference to any comments regarding age or race on the part of any decisionmaker, no statistics showing that older or African-American employees as a group receive less favorable treatment, and no comparison to employees outside of Hargrave's protected classes who were treated more favorably in similar situations. Hargrave argues that it is sufficient that she, a black person in her 50s, was immediately replaced by a white person in her early 30s.

The Supreme Court of Appeals of West Virginia has elaborated on the "but for" element in Conway, writing that it is "merely a threshold inquiry, requiring only that a plaintiff show an inference of discrimination." Syl. Pt. 2, Barefoot v. Sundale Nursing Home, 457 S.E.2d 152 (W. Va. 1995). The court clarified that if a plaintiff alleging discriminatory discharge produces evidence that (1) she was a member of a protected class, (2) she provided "competent, capable, and loyal service to her employer,"

**MEMORANDUM OPINION AND ORDER**
**DENYING MOTION FOR SUMMARY JUDGMENT [ECF NO. 40]**

(3) she was discharged, and (4) she was replaced by someone not of her protected class, then an inference of discrimination exists. Id. at 162.[2]  Here, it is undisputed that Hargrave, a black person in her 50s, was fired and replaced by a white person in her early 30s.  Hargrave has also produced evidence that she provided competent, capable, and loyal service to her employer, based on her 2020 performance review and her lack of verbal or written reprimand until Koch became her supervisor.  Accordingly, the Court finds that Hargrave has established a prima facie case with respect to Count One (age discrimination) and Count Two (racial discrimination).

> **B. Davis has satisfied its burden by claiming that Hargrave's employment was terminated due to her failure to complete the objectives in her updated performance improvement plan.**

After a plaintiff establishes a prima facie case, "the burden shifts to the defendant 'to articulate some legitimate, nondiscriminatory reason for the employee's rejection.'" Shepherdstown Volunteer Fire Dep't, 309 S.E.2d at 352 (citation

---

[2] More specifically with respect to Count One, the Supreme Court of Appeals has found that "a plaintiff, who is age forty or older, pursuing an age discrimination claim under the West Virginia Human Rights Act, . . . may satisfy the third prong of the prima facie age discrimination test" from Conway by "presenting evidence that he/she was replaced by a 'substantially younger' employee."  Syl. Pt. 4, Knotts v. Grafton City Hosp., 786 S.E.2d 188 (W. Va. 2016).  While the court hesitated to adopt a bright-line rule, it noted that "[a]ge differences of ten or more years have generally been held to be sufficiently substantial" to satisfy the rule.  Id. at 198-99 (citation omitted).

**MEMORANDUM OPINION AND ORDER**
**DENYING MOTION FOR SUMMARY JUDGMENT [ECF NO. 40]**

omitted).   The parties agree that Davis has satisfied its burden by claiming that Hargrave's employment was terminated because she failed to complete the requirements in the updated PIP.   The Court also agrees that Davis has satisfied its burden.

   **C.  Hargrave has satisfied her burden to show pretext because she has produced sufficient evidence for a rational jury to find that Davis's explanation is not credible.**

   After the employer has provided a non-discriminatory reason for the adverse employment action, the burden shifts back to the plaintiff to produce evidence that the employer's stated reason is pretext.   A proffered reason is pretext if it was not "the true reason for the decision[.]"   Mayflower Vehicle Sys., Inc. v. Cheeks, 629 S.E.2d 762, 772 (W. Va. 2006) (citation omitted).   As the Fourth Circuit has explained, "[a] plaintiff may satisfy this burden by showing either that the employer's explanation is not credible, or that the employer's decision was more likely the result of" discrimination.   Adkins v. CSX Transp., Inc., 70 F.4th 785, 793 (4th Cir. 2023).   "Pretext may be shown through direct or circumstantial evidence of falsity or discrimination."   Barefoot, 457 S.E.2d 161.   If "the fact-finder disbelieves the defendant's explanation for the adverse action taken against the plaintiff, the factfinder justifiably may conclude that the logical explanation for the action was the unlawful discrimination."   Syl.

**MEMORANDUM OPINION AND ORDER**
**DENYING MOTION FOR SUMMARY JUDGMENT [ECF NO. 40]**

Pt. 5, <u>Skaggs v. Elk Run Coal Co., Inc.</u>, 479 S.E.2d 561 (W. Va. 1996).

Here, the Court finds that Hargrave has produced sufficient evidence to lead a rational jury to find that Davis's stated reason for terminating her employment is false and, therefore, pretext. First, Koch and Wildman had worked with Hargrave for only a short period of time. Koch became Hargrave's supervisor in February 2022 and had never previously worked with her. Wildman had not worked with Hargrave prior to March 2022. After a mere 43 days, Koch determined that Hargrave did not meet his expectations and placed her on a PIP. A jury could find that neither Koch nor Wildman knew enough about Hargrave's capabilities to be able to offer any criticism of her performance, particularly in such a short period of time.

Second, a jury could find that Koch was not thorough in assessing Hargrave's performance, which could lead the jury to find that he was searching for an excuse to fire her. For instance, when Koch gave Hargrave a poor review and placed her on a PIP, he had never looked at her personnel file to see if she had prior performance issues or what her prior performance rating had been. Koch contends that Dempsey had criticisms of Hargrave, but Dempsey had rated Hargrave at 25.1 out of 24 points and at 104.67% on her most recent performance review. No one ever criticized Hargrave's

**MEMORANDUM OPINION AND ORDER**
**DENYING MOTION FOR SUMMARY JUDGMENT [ECF NO. 40]**

performance to her before Koch was her supervisor.  The PIP stated
that Hargrave needed to show courtesy and respect when speaking
with staff, but Koch did nothing to determine whether the
allegation that she was being discourteous or disrespectful was
true.  He never asked Hargrave about it, did not know if it had
been investigated, and did not know its source.  Koch wrote on the
PIP that Hargrave needed to communicate better and notify him when
her schedule needed to be adjusted, but during his deposition,
Koch could not point to any day or time when there was an issue
with her work schedule.  Hargrave reached 94% on the MSP audits,
which was just 3% below her goal.  The jury could find that this
difference is so small that it was not a true reason for
terminating her employment.  Overall, these facts could lead a
jury to find that Koch had already decided to fire her for another
reason and was searching for a performance-related justification
to do so.

Third, Davis provided Hargrave with conflicting
justifications for terminating her employment, which weighs
against Davis's credibility.  Davis has stated that Hargrave's
failure to comply with the updated PIP was the reason for her
termination.  During Hargrave's termination meeting, however,
someone provided her with a list of issues regarding her
performance.  No one discussed the list with her.  Wildman and

**MEMORANDUM OPINION AND ORDER**
**DENYING MOTION FOR SUMMARY JUDGMENT [ECF NO. 40]**

Koch did not draft the list, do not know the source of the information on the list, and do not have evidence to support the issues on the list. The PIP did not include the issues on the list. These conflicting reasons for termination could lead a rational jury to find that Davis's proffered justification is false.

Fourth, Wildman and Koch knew that Cunningham was not qualified for the Patient Access Manager position under the original requirements, and they proceeded to change the requirements before posting the position. Still, Wildman testified that they changed the requirements due to a lack of applicants. Davis ultimately hired Cunningham over at least one applicant who was, unlike Cunningham, qualified under the original requirements. For instance, Koch chose to hire a qualified college graduate for an administrative position (no bachelor's degree required) rather than hire her for the Patient Access Manager position. Under these facts, a rational jury could find that Koch and Wildman were already set on replacing her with Cunningham and that Davis's stated reason for terminating her employment was false. For all of these reasons, a rational jury could find that Davis engaged in unlawful discrimination.

HARGRAVE V. DAVIS                                          2:24-CV-01

**MEMORANDUM OPINION AND ORDER**
**DENYING MOTION FOR SUMMARY JUDGMENT [ECF NO. 40]**

**V.    CONCLUSION**

After considering the parties' briefs and the entire record presented, the Court finds that there is a genuine dispute over material facts in this case.  Viewing the evidence in the light most favorable to Hargrave, a rational jury could find in her favor.  Accordingly, the motion for summary judgment is **DENIED** [ECF No. 40].

It is so **ORDERED.**

The Clerk is directed to transmit copies of this Memorandum Opinion and Order to counsel of record.

DATED: September 4, 2025

Tom S Kleeh
_____
THOMAS S. KLEEH, CHIEF JUDGE
NORTHERN DISTRICT OF WEST VIRGINIA